# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE THORNTON, | CASE NO. CV 14-7942 DSF (SHx) |
| Plaintiff, | FINDINGS OF FACT AND CONCLUSIONS OF LAW AFTER COURT TRIAL ON ADMINISTRATIVE RECORD |
| v. | |
| SEDGWICK CMS, a corporation; SOUTHERN CALIFORNIA EDISON COMPANY, a corporation; EDISON LONG TERM DISABILITY PLAN, an ERISA plan, | |
| Defendants. | |

## INTRODUCTION

This action is brought pursuant to the Employee Retirement Income Security Act of 1974 (ERISA) (29 U.S.C. § 1001, et seq.). Plaintiff Catherine Thornton contends that Sedgwick CMS, which serves as the administrator for the Southern California Edison Long Term Disability Plan (the Plan), incorrectly determined in January 2014 that she was no longer eligible for disability benefits. After considering the parties' trial briefs, oral arguments, the evidence in the administrative record,[1] the Plan documents, and the parties' briefs and evidence on

---

[1] The administrative record submitted to the Court prior to trial (SCE1-1615) was apparently incomplete. At oral argument, Plaintiff pointed to documents that were not

the motion seeking judgment, the Court makes the following Findings of Fact and Conclusions of Law.

**FINDINGS OF FACT**

Plaintiff worked for Southern California Edison Company (SCE) from March 28, 1982, until she became disabled on or about January 9, 2012. AR 330. She worked as a Project Manager, and repetitive computer use resulted in her developing bilateral cubital tunnel syndrome, bilateral carpel tunnel syndrome, and bilateral epicondylitis. AR 247. On January 10, 2012, Plaintiff underwent surgery on her left arm. AR 204. On June 19, 2012, she underwent surgery on her right arm. AR 552. Both surgeries were performed by Dr. Navid Ghalambor. AR 204, 552.

Plaintiff was initially deemed eligible for long-term disability benefits under the Plan because she was unable to continue working as a Project Manager. AR 330; see Plan Documents (PD) 1659. The Plan provides up to two years of benefits for employees who are unable to perform their customary job. PD 1661. Plaintiff was deemed disabled starting January 10, 2012. AR 93. After two years, however, Plaintiff could only continue receiving benefits if she was unable to perform "any reasonable job for the company." PD 1661. The Plan defines a "reasonable job" as "any gainful activity in any job classification for which you are or may reasonably become fitted by education, training, or experience." PD 1662.[2] The parties dispute whether Plaintiff could become fitted for the job identified by Sedgwick when it denied her claim in 2014.

The SCE Company Benefits Committee is the administrator. PD 1674. It

---

provided to the Court but should have been in the administrative record. Defendants subsequently acknowledged that the administrative record was incomplete. It produced a revised administrative record to Plaintiff and certain e-mails collected from SCE Disability Management. See Guzman Decl., ¶ 5; Exhibit B, C.

[2] The definition also includes geographic limitations, but that is not at issue in this case.

2

has discretion to review and evaluate all medical evidence and make factual determinations with respect to eligibility. PD 1662. The administrator is also vested with "full and final power and discretionary authority to determine eligibility to participate in the plans, to determine covered benefits, and to interpret, construe and apply the terms and provisions of the plan[]." PD 1674. The Committee need not exercise its authority directly, however. It may designate another entity to carry out its administration responsibilities, see PD 1674; in this case, the Committee delegated its authority to Sedgwick Claims Management Service, Inc. See PD 1679, 1688-93.

Three physicians examined Plaintiff and offered opinions on her ongoing disability prior to the termination of benefits. On February 14, 2013, Dr. Ghalambor found Plaintiff's condition to be permanent and stationary. AR 86-87. He determined that she could type no more than 15 minutes followed by 45 minutes of rest, she could lift no more than 10 pounds, she could not perform repetitive grasping, and she could not drive more than 30 minutes per day. AR 89. On November 6, 2013, Dr. Stephen Wertheimer evaluated Plaintiff and determined she would have to limit herself to 15 minutes of typing at a time and could not do heavy lifting because of her weak grip. AR 313. On November 20, 2013, Dr. Ibrahim Yashruti examined Plaintiff and found she could only do fine manipulation and power grasping bilaterally for 5 minutes, followed by a 30 minute break. AR 248-49. She could do simple grasping for 10 minutes, followed by a 30 minute break. Id.

On January 8, 2014, vocational specialist John Meyers concluded in a transferrable skills analysis that Plaintiff could work as a Customer Specialist with the assistance of voice activated software. AR 291. He opined that even though the job ordinarily exceeded Plaintiff's limit for hand use, voice activated software could be used to reduce fine manipulation to a level consistent with her restrictions. Id. The analysis makes no mention of the required mouse use in the job.

3

1 Two days later, Sedgwick notified Plaintiff that her long-term disability
2 benefits were being terminated based on her ability to work as a Customer
3 Specialist with voice activated software. AR 331. She received benefits until
4 February 28, 2014. AR 331. Meanwhile, Plaintiff appealed in letters dated
5 January 14 and 17, 2014. AR 379, 386. Among other things, she argued the
6 Customer Specialist job required a mouse, which she could not use, because it was
7 a fine manipulation. AR 380.

8 Per the Plan's appeals process, see PD 1668, Sedgwick hired three
9 orthopedic surgeons to review Plaintiff's claim, and it specifically asked whether
10 use of a computer mouse was fine manipulation, which would be restricted for
11 Plaintiff. AR 391-92.[3] Dr. Thomas Baylis, in his revised report, concluded that
12 Plaintiff could keyboard 15 minutes, followed by 45 minutes of rest but could not
13 lift more than 5 pounds with either hand or drive more than 30 minutes per day.
14 AR 669. He concluded that Plaintiff could perform a reasonable occupation if the
15 job met her restrictions but that "[m]ousing would be considered fine manipulation
16 and would also be prohibited for her." AR 669. Dr. John Graham concluded that
17 Plaintiff could not lift more than 5 pounds and could not be required to do any
18 "repetitive fine manipulation or grasping of the bilateral upper extremities." AR
19 404. He also noted that she would be restricted from jobs that required mousing.
20 Id. Dr. Darryl Thomas believed there was no evidence to support limited fine or
21 manual dexterity of the hands, but he was an outlier among the various physicians
22 who reviewed Plaintiff's case. AR 410. He did agree that mousing was considered
23 fine dexterity. AR 410.

24 On May 27, 2014, Sedgwick asked John Meyers for another transferrable
25 skills analysis. AR 1032. He used a restriction consisting of typing limited to 15
26 minutes per hour. AR 1036. He also noted that Plaintiff could not perform any

---

[3] Sedgwick also ordered reviews by cardiac specialists and gastroenterologists, but their assessments are not relevant here.

4

mousing or tasks that required fine manipulation or grasping. Id. Meyers called mousing a "new work restriction," but pre-termination examiners had already identified fine manipulation as a restriction prior to the initial skills analysis. See AR 249. Meyers again concluded that Plaintiff could work as a Customer Specialist I, but this time with voice activated software and a foot mouse. AR 1037.

Mousing was a requirement for the Customer Specialist job. On May 28, 2014, SCE's Monica Camara said the company could not accommodate an employee who could not perform any mousing. Fleishman Decl., Ex. 6, at 2043.[4] On June 2, 2014, Sedgwick appeals specialist Kimberly Pirok e-mailed SCE Disability Manager Deborah Jacobs to say she believed it would be unfair to uphold the January 2014 denial of benefits because the mousing accommodation was not offered at the time of the denial. Fleischman Decl., Ex. 5 (Dkt. 57-3) at SCE1704. Jacobs responded by saying that SCE consistently provides "standard ergonomic accommodations (special chair, sit/stand work station, voice software)." Id. at SCE1703. "Therefore, since voice software and foot mouse are standard accommodations provided by SCE," the Customer Specialist job was a reasonable one. Id. Three days later, on June 5, 2014, Sedgwick denied Plaintiff's appeal. AR 1533.

The administrative record does not support the assertion that a foot mouse is a "standard accommodation" or that Sedgwick investigated whether Plaintiff could actually use a foot mouse as a Customer Specialist prior to denying her claim. In fact, three months after Plaintiff's administrative appeal was denied, SCE's disability management office indicated that employees are generally restricted to

---

[4] This claims note was not included in the administrative record provided to the Court before trial. It had previously been provided to Plaintiff during the administrative process apparently. Defs.' Opp. (Dkt. 58) at 4:18-25. Following the trial and an order by the Court, a revised administrative record and e-mails from Sedgwick disability managers were produced by Sedgwick. Defs.' Opp. at 5:12-23.

5

one assistive device. AR 1595.[5]  It was not until January 2016 – two months after the trial in this matter – that SCE purchased a foot mouse with which Plaintiff could take the Customer Specialist test. Bolton Decl., ¶ 8.

## **CONCLUSIONS OF LAW**

ERISA permits an individual to challenge a denial of benefits in federal court. Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 108 (2008) (citing 29 U.S.C. § 1132(a)(1)(B)). The applicable standard of review depends on the language of the plan, but if an ERISA plan unambiguously grants discretion to the administrator, the denial of benefits is reviewed for abuse of discretion. Abatie v. Alta Health & Life Ins. Co., 458 F.3d 955, 963 (9th Cir. 2006). While there are no "magic" words indicating that an administrator has discretion, discretion can generally be granted by giving the administrator the power to construe uncertain terms and to make final benefits determinations. Id.; Feibusch v. Integrated Device Tech., Inc. Emp. Ben. Plan, 463 F.3d 880, 884-85 (9th Cir. 2006) (listing discretionary language). If the administrator delegates its authority to another fiduciary, the abuse of discretion standard still applies. See Madden v. ITT Long Term Disability Plan for Salaried Emps., 914 F.2d 1279, 1283-84 (9th Cir. 1990).

In applying abuse of discretion, the Court may not substitute its view for that of the factfinder. Salomaa v. Honda Long Term Disability Plan, 642 F.3d 666, 676 (9th Cir. 2011). Instead, it must leave the administrator's decision undisturbed unless it is illogical, implausible, or without support in inferences that can be drawn from the record. Id. The Court's deference will be tempered by skepticism, however, if the administrator gives inconsistent reasons for a denial, fails to provide a full review, or fails to follow proper procedure in denying the claim.

---

[5] The evidence cited in Sedgwick's Motions in Limine No. 1 (Dkt. 44), No. 2 (Dkt. 45), No. 3 (Dkt. 46) had no bearing on the Court's determination here. They are denied as moot.

6

1  Harlick v. Blue Shield of California, 686 F.3d 699, 707 (9th Cir. 2012).  The
2  decision will be reversed if it is arbitrary and capricious or the "plan administrator
3  fail[ed] to develop facts necessary to make its determination." Schikore v.
4  BankAmerica Supp'l Ret. Plan, 269 F.3d 956, 960 (9th Cir. 2001).

5        Plaintiff argues that Sedgwick's decision should be subjected to de novo
6  review because the Plan does not clearly and unambiguously grant discretion.  See
7  Pl.'s Trial Brf. at 12:2-4.  But no magic words are required to bestow discretion,
8  and the Plan grants the administrator the "full and final power and discretionary
9  authority to determine eligibility to participate in the plan[], to determine covered
10 benefits, and to interpret, construe and apply the terms and provisions of the
11 plan[]."  PD 1674.  See also Barnett v. S. Calif. Edison Co. Long Term Disability
12 Plan, No. 13-16925, 2015 WL 8056622, at *1 (9th Cir. Dec. 7, 2015) (finding
13 SCE's plan gave the committee discretionary authority).  The committee delegated
14 its authority to Sedgwick.  See PD 1679.  Abuse of discretion applies here.

15       The Court finds that Sedgwick abused its discretion by denying Plaintiff
16 disability benefits without fully considering her restrictions.  It failed to develop
17 the factual record necessary to make the finding that Plaintiff could work as a
18 Customer Specialist.  The January 8, 2014, assessment on which Sedgwick relied
19 did not consider whether Plaintiff could work as a Customer Specialist without a
20 conventional computer mouse, even though her fine manipulation restriction was
21 identified by Dr. Yashruti in November 2013.  Sedgwick compounded the error by
22 upholding the denial of benefits, apparently at the urging of SCE, without
23 investigating whether both voice activated software and a foot mouse could
24 actually be used to test for or work the Customer Specialist position.  See SCE
25 1703-04, AR 1533.  Correspondence with SCE's disability management office and
26 the declaration submitted by SCE's interim testing manager suggests that was not
27 the case until January 2016 – long after her disability claim was denied.  See AR
28 1595, 1599; Bolton Decl., ¶ 8.

The Court therefore enters judgment for the Plaintiff.

Sedgwick urges the Court to remand the case to the administrator, citing Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 456 (9th Cir. 1996). But remand is not necessary where no factual determinations remain to be made. Canseco v. Constr. Laborers Pension Trust for S. California, 93 F.3d 600, 609 (9th Cir. 1996). In January 2016, Sedgwick determined that Plaintiff could test for the Customer Specialist position with her disability restrictions. See Guzman Decl., ¶ 11. SCE acquired a foot mouse for that purpose that month. See Bolton Decl., ¶ 8. But on January 22, 2016, Plaintiff indicated that she would not test for the position until she got additional details on the test scoring, criteria, and conditions. Guzman Decl., Exhibit J at 1. Under the Plan, Sedgwick was obligated to determine whether Plaintiff could perform a reasonable job for SCE. By January 22, 2016, it had done so. Plaintiff is entitled to back benefits from March 1, 2014, through January 22, 2016, and pre-judgment interest at the Treasury bill rate. See Blanton v. Anzalone, 813 F. 2d 1574, 1576 (9th Cir. 1987) (finding district court should calculate applicable interest rate based on the 52-week Treasury bills).

Plaintiff has indicated that she intends to seek attorneys' fees and costs pursuant to 29 U.S.C. § 1132(g), but she hopes to reach an agreed-upon amount with SCE. See Proposed Order (Dkt. 57-4). Any motion concerning attorneys' fees must comply with the Court's standing order on fees.

Plaintiff is ordered to meet and confer with Sedgwick regarding attorneys' fees and costs and to file a proposed judgment consistent with this order.[6]

May 10, 2016

_____
Dale S. Fischer
United States District Judge

---

[6] Plaintiff's Motion for Judgment (Dkt. 57) is now moot.

8